IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ITL INT'L, INC., and | § | |
| MARS INCORPORATED | § | PLAINTIFFS |
| | § | |
| v. | § | CAUSE NO. 1:10CV467 LG-RHW |
| | § | |
| CONSTENLA, S.A. and | § | |
| GROUPO CONSTENLA, S.A. | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO DISMISS

BEFORE THE COURT is the First Motion to Dismiss for Lack of Jurisdiction and Improper Venue and Forum Non Conveniens [11] filed by the Defendants. The Plaintiffs have responded, and Defendants have replied. After careful consideration of the submissions, the Court finds that the Defendants do have minimum contacts with Mississippi. Nevertheless, because exercising jurisdiction over the Defendants would violate due process, the Motion to Dismiss for lack of jurisdiction will be granted.

FACTS AND PROCEDURAL HISTORY

Plaintiffs, Mars Corporation and its subsidiary ITL International, are Delaware corporations with their principal places of business in Virginia. Mars Corporation was qualified to do business in Mississippi prior to filing this suit. ITL International has since qualified. Accordingly, both are also residents of Mississippi. Defendant Constenla, a subsidiary of Defendant Grupo Constenla, is a Costa Rican corporation with its principal place of business in Costa Rica.

The Plaintiffs ("Mars") sell their products to the Defendants ("Constenla") for importation and distribution in Costa Rica. When Constenla places an order, it directs

Mars to ship the products FOB to the Port of Gulfport, in Gulfport, Mississippi, where title and possession transfer to Constenla.

According to the Complaint, Mars had an importation and distribution agreement with a Costa Rican company called Ciamesa.[1] That agreement was effective from its inception on May 28, 1992, until Ciamesa was acquired by Constenla in 1996. It provided that Ciamesa would develop the Costa Rican market and promote the sales of Mars products in Costa Rica. Mot. to Dism. Ex. A-1, ECF No. 12-1. Ciamesa agreed to comply with Mars' standards and policies regarding its products, sell a minimum volume, and respect the Mars trademarks. *Id.* at 1-2. The agreement further provided that, "[t]his Agreement is personal to CIAMESA and it may not be assigned or otherwise transferred, either apart from or as a part of CIAMESA's business, to any other party without [Mars'] prior written approval." *Id.* at 3. There was no forum selection or choice of law provision.

After Ciamesa was merged into Constenla in 1996, Mars sold its products for importation and distribution in Costa Rica to Constenla rather than Ciamesa. Mars alleges that this relationship was not related to the agreement with Ciamesa, since that agreement terminated on its own terms with the merger.

Recently, Mars decided to sell its products directly to some large Costa Rican retailers. When Mars engaged in discussions with Constenla to change the way Mars products were handled in the Costa Rican market, Constenla claimed it had acquired

---

[1]   The agreement was between Ciamesa and Master Foods International, a subsidiary of Mars Incorporated that became ITL International, Inc.

the importation and distribution rights of Ciamesa by the merger in 1996. Constenla claimed that under Costa Rican law (Law 6209) and the terms of the Ciamesa contract, Mars was liable for a termination penalty of more than $7 million.

Mars subsequently filed suit in this Court claiming diversity and federal question jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) and 1331, respectively. They seek a declaration that 1) they are free to sell and deliver Mars products to others for distribution in Costa Rica; and 2) any license that Constenla may have had to use the Mars Marks is cancelled, ended and terminated. In addition, Mars seeks to permanently enjoin Constenla from making any claim or asserting that they are Mars agents, importers, representatives, or distributors in Costa Rica, and from tortiously interfering with Mars in any of those activities. Also, in the event the Ciamesa contract is found to apply to Constenla, Plaintiffs allege that Constenla has breached two of the provisions by demanding a termination payment.

## DISCUSSION

Constenla filed this Motion pursuant to FED. R. CIV. P. 12(b)(2) asserting three general grounds for dismissal: 1) ineffective service of process; 2) Mississippi is an inconvenient forum; and 3) lack of in personam jurisdiction over it.[2] In response to Constenla's challenge to any assertion of jurisdiction by this Court, the Plaintiffs allege three bases for personal jurisdiction over Constenla: 1) Constenla made a general appearance and thereby waived its objections; 2) Constenla is subject to personal

---

[2]The Court does not reach the service of process or venue grounds for dismissal, because the personal jurisdiction issue is dispositive.

jurisdiction pursuant to Mississippi's long-arm statute; and 3) Constenla is subject to personal jurisdiction based on FED. R. CIV. P. 4(k)(2).

1.   Waiver of Objections to Personal Jurisdiction

Mars alleges that Constenla accepted service of the summons and complaint by making a general appearance through its attorneys before United States Magistrate Judge Robert Walker without reserving any right to object to in personam jurisdiction. Am. Compl. 3 (¶8), ECF No. 10.  Plaintiffs refer to the telephone conference conducted by Magistrate Judge Walker which resulted in an Agreed Order maintaining the status quo until this Court could hear the Motion for Temporary Restraining Order and Preliminary Injunction.   That Order recites that Constenla "reserv[es] any jurisdictional, venue or forum non conveniens objections." Agreed Order, Oct. 6, 2010, ECF No. 8.  Constenla asserted those defenses in its First Motion to Dismiss for Lack of Jurisdiction and Improper Venue and Forum Non Conveniens.  ECF No. 11.  These defenses must be made in a responsive pleading or in the defendant's first Rule 12 motion to dismiss, failing which they are waived.  *See* FED. R. CIV. P. 12(h).  Constenla expressly reserved its jurisdictional defenses in its first "appearance," which was only due to the urgent nature of the Plaintiffs' application for a temporary restraining order. When Constenla first responded to the allegations in the complaint, it asserted its jurisdictional defenses again.  Under these circumstances, Constenla did not waive its objections to service of process or personal jurisdiction.  *See Regions Bank v. Britt*, 642 F. Supp. 2d 584, 588 (S.D. Miss. 2009).

2.   Personal Jurisdiction

The party invoking the jurisdiction of a federal court bears the burden of establishing the court's jurisdiction over a nonresident defendant.  *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).  When the Court does not rely on an evidentiary hearing but instead decides the motion on the basis of pleadings and exhibits on file, the party urging jurisdiction is only required to present a prima facie case of personal jurisdiction.  *See Brown v. Flowers Indus.,* Inc., 688 F.2d 328, 332 (5th Cir. 1982); *DeMelo v. Toche Marine Inc.*, 711 F.2d 1260, 1270-71, (5th Cir.1983).

The allegations of the complaint except insofar as controverted by opposing affidavits must be taken as true, and all conflicts in the facts, including the facts alleged in opposing affidavits, must be resolved in  favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established.  *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

The Plaintiffs in this case assert jurisdiction on the basis of diversity and federal question under the Lanham Act.[3]  In this situation, "there is no difference in the requirements for personal jurisdiction whether there is a federal question or a diversity of citizenship basis for subject matter jurisdiction."  *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 775 (S.D. Miss. 2001).

"A federal court sitting in diversity may exercise personal jurisdiction only to the

---

[3]   Plaintiffs do not explicitly cite to the Lanham Act in their Amended Complaint, but in their Response to the Motion to Dismiss they refer to their allegations of Trade Mark infringement as claims under the Lanham Act, 15 U.S.C. § 1127, *et seq.*

extent permitted a state court under state law." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir.2 006) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005)). "The court may only exercise jurisdiction if: '(1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution.' " *Id.* (quoting *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997)).

  a) *The Mississippi Long-Arm Statute:*

Under the Mississippi long-arm statute, courts of this state may exercise personal jurisdiction over a nonresident defendant if the defendant has entered a contract with a Mississippi resident to be performed in Mississippi, or has committed a tort in Mississippi, or is conducting business in Mississippi.[4]  Plaintiffs contend that the Court may exercise personal jurisdiction over Constenla pursuant to the "doing business" provision of the Mississippi long-arm statute.

---

[4]  Mississippi's long-arm statute provides:
Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss.Code Ann. § 13-3-57.

The general requirements for jurisdiction under the "doing business prong" of the Mississippi long-arm statute are that: "(1) the nonresident . . . must purposefully do some act or consummate a transaction in Mississippi; (2) the cause of action must either arise from or be connected with the act or transaction; and (3) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice." *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 775 -776 (S.D. Miss. 2001) (quoting *Gross v. Chevrolet Country, Inc.*, 655 So.2d 873, 877 (Miss. 1995)).

The purposeful acts of Constenla alleged by the Plaintiffs are 55 specific instances of receiving possession and title to Plaintiffs' goods at the Port of Gulfport, Mississippi for shipment and sale in Costa Rica. There is a direct connection alleged, in that the parties' purchaser/supplier relationship is at issue in this case. As to the third requirement, the Mississippi Supreme Court has given an indication of how it views the fairness considerations at issue in this case in *Galbraith & Dickens Aviation Insurance Agency v. Gulf Coast Aircraft Sales, Inc.*, 396 So. 2d 19 (Miss. 1981). In that case, the court applied the Oklahoma long-arm statute, which unlike Mississippi's statute, "extended to the outer limits permitted by the due process requirements of the Fourteenth Amendment."[5]   *Id.* at 22. The court noted that "[i]n general, [other jurisdictions] have expressed a reluctance to assert jurisdiction over a nonresident buyer," citing cases out of Massachusetts, Illinois, Kansas, New Jersey, Minnesota, and

---

[5] The reach of Mississippi's long-arm statute is not coextensive with due process. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 n.7 (5th Cir. 2000).

the First Circuit Court of Appeals.  *Id.* (citations omitted).

The court continued:

> The reason most often given for this buyer-seller distinction is that the seller is the aggressor or initiator in the forum and by selling his product in the state he receives the benefit and protection of the forum state's laws, and hopefully profits from its business therein.  Further, allowing jurisdiction over "passive" buyers would tend to extinguish state lines and also to discourage out-of-state purchasers from dealing with resident sellers.

*Id.* at 22-23.  As the facts developed in the course of that litigation, it became clear that the Oklahoma insurance seller had solicited the Mississippi buyer's insurance business in Mississippi.  *Id.* at 21.  The court determined that the Oklahoma statute (and by extension, due process) would not allow Oklahoma courts to subject a "passive" Mississippi purchaser of insurance to in personam jurisdiction in Oklahoma.  *Id.* at 23. Those are not the circumstances here, but it appears from the discussion above that Mississippi courts might find the third element of the "doing business" prong lacking.[6]

The Mississippi long-arm statute also allows exercise of personal jurisdiction over a nonresident corporation if the nonresident made a contract with a Mississippi resident to be performed in whole or in part in this state.  If such a contract was entered, then the non-resident will be subject to jurisdiction of Mississippi courts, provided that the exercise of jurisdiction is consistent with due process.  *Am. Cable*

---

[6] In dicta, the Fifth Circuit disapproved of a similar distinction between buyers and sellers applied by Louisiana courts, suggesting instead that "[t]he status of buyer or seller is only one element which helps describe the quality of the defendants contacts with the forum."  *Standard Fittings Co. v. Sapag S.A.*, 625 F.2d 630, 640 (5th Cir. 1980).

*Corp. v. Trilogy Commc'ns, Inc.* 754 So.2d 545, 549 (Miss. App. 2000) (citations omitted).

The Plaintiffs' theory of this case is that it has no written importation or distribution contract with Constenla. Nevertheless, the parties have cooperated in mutually advantageous purchase and sale arrangements since 1996, apparently under the same terms as the Ciamesa agreement. This is a form of contract, and can form a basis for personal jurisdiction, if the contract was to be performed in whole or in part in Mississippi. *See, e.g., Sorrells v. R&R Custom Coach Works, Inc.*, 636 So.2d 668, 671 (Miss. 1994) (express or implied manufacturer's warranties were a form of contract for purposes of personal jurisdiction). The FOB term referred to by the parties "means that the seller was contractually obligated to make delivery in [Gulfport], not elsewhere." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citations omitted). Thus, there is a contract with a Mississippi resident that is to be performed in part in Mississippi. Accordingly, in personam jurisdiction in Mississippi is proper under the contract prong of the long-arm statute.

b) *Due Process:*

The exercise of personal jurisdiction comports with due process where: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 367 (5th Cir. 2010) (citation omitted).

There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Plaintiffs allege that Constenla's contacts with Mississippi give rise to specific personal jurisdiction over Constenla in Mississippi.

Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted); *Clemens*, 615 F.3d at 378. The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state. *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. In the Fifth Circuit, specific jurisdiction also requires that the exercise of personal jurisdiction be fair and reasonable. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Constenla's Contacts

Plaintiffs allege and Constenla agrees that Constenla has chosen the Gulfport, Mississippi, port from which to acquire Plaintiffs' goods. Constenla explains that it chose Gulfport because Plaintiffs require that its products be shipped in refrigerated containers, and the Gulfport port has the best availability of refrigerated containers. Plaintiffs argue that by affirmatively specifying the Gulfport port to receive the products, Constenla has created minimum contacts in Mississippi.

The Supreme Court has stated that parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (citations omitted).  A recent decision out of the Eleventh Circuit Court of Appeals, *Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, 593 F.3d 1249 (11th Cir. 2010), examined the contacts of a buyer in a case factually similar to this one.

In *Diamond Crystal*, the court explained that nonresident purchasers can be subject to jurisdiction in the seller's forum if further contacts or plus factors are present.  *Diamond Crystal*, 593 F.3d at 1268.  Among the relevant plus factors are "establishing a relationship by placing multiple orders [and] requiring performance in the forum" *Id*. at 1268-69.  These factors indicate that the defendant deliberately affiliated with the forum, and thus should reasonably anticipate defending a suit there. *Id*. at 1269 (citing *Burger King*, 471 U.S. at 482).

The *Diamond Crystal* court found that the purchaser purposefully engaged in fourteen transactions in six months, thereby establishing a substantial and ongoing relationship with the seller in the forum state.  *Id*. at 1269.  Another important factor was that the purchaser specified delivery by customer pickup in the forum state, even though "[a]n F.O.B. forum delivery term does not necessarily create minimum contacts because it is a formal term relating to title and who bears the risk of loss."  *Id*. at 1272-73.  The "customer pickup" term indicated that the purchaser intended to affiliate with

the forum state and invoke the benefits and protections of its laws.  *Id*. at 1273. Further, although the purchaser never took physical delivery, it was sufficient that the purchaser did take and transfer legal title to the goods in the forum state.  *Id.*  The court therefore found that the purchaser purposefully established minimum contacts with the forum state and reasonably should have anticipated defending a suit there.

The factual similarities between *Diamond Crystal* and this case lead the Court to conclude that Constenla has created purposeful and continuing obligations between itself and the Plaintiffs, who are Mississippi residents.  Constenla's specification of delivery in Mississippi, for its own business purposes, is a point of contact with Mississippi.  *See Lansing Trade Grp., LLC v. 3B Biofuels GmbH & Co., KG*, 612 F. Supp. 2d 813, 827-28 (S.D. Tex. 2009).  By specifying and utilizing the Gulfport port for delivery, Constenla "manifestly has availed [itself] of the privilege of conducting business" in Mississippi.  *Burger King* at 475.  Because Constenla's activities are shielded by the benefits and protections of Mississippi's laws it is presumptively not unreasonable to require Constenla to submit to the burdens of litigation in Mississippi as well.  *Id.*

<u>The Nexus</u>

The parties disagree as to whether the required nexus is present.  The Plaintiffs wish the Court to focus on their relationship with Constenla up to the point where they deliver their product to the Gulfport port.  Plaintiffs argue that their "principal claim is, in effect, that sales no. 1-91, principally occurring in Gulfport at Constenla's

choosing, do not obligate Mars to make sale no. 92 or to pay Constenla a penalty for not making it." Pl. Resp. in Opp. 2, ECF No. 25. In contrast, Constenla argues that the dispute is centered in Costa Rica, and is governed by the Ciamesa agreement and Costa Rica law, neither of which have any relevance to delivery of product at the Port of Gulfport.

It is clear from the Plaintiffs' allegations that Mississippi is not the locus of the distribution dispute. However, delivery in Mississippi is one aspect of the parties' relationship with one another, and it provides a Mississippi nexus. The Court finds a sufficient Mississippi connection to the parties' dispute to satisfy due process.

"Fair and Reasonable"

Once a plaintiff has established a prima facie showing of sufficient minimum contacts to support jurisdiction, a court must still consider whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *Cent. Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (internal quotation marks and citations omitted). The exercise of jurisdiction must be reasonable in light of the circumstances. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). Where a defendant has purposefully directed its activities at the forum state's residents, it must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska,*

*Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999).

The inquiry consists of five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). These factors "are designed to put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations," *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994), and may "render jurisdiction unreasonable" despite the presence of minimum contacts. *Burger King*, 471 U.S. at 477.

The first factor addresses fairness in light of the burden on the defendant of appearing in a foreign jurisdiction. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114 (1987). "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115 (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)). However, courts have also recognized that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 294 (1980) (quotation marks omitted). "[S]taging a defense

-14-

in a foreign jurisdiction is almost always inconvenient and/or costly, ... [so] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker*, 42 F.3d at 64. There appear to be no special or unusual burdens presented by the prospect of litigation in Mississippi. This factor does not weigh in favor of either party.

The second factor, the interest of the forum, focuses on the forum state. The First Circuit Court of Appeals has observed that "[t]he purpose of [this] inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir. 1995). The forum state has a demonstrable interest in exercising jurisdiction over one who causes tortious injury within its borders. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984). Mississippi certainly has an interest in protecting its residents from potential losses that might occur as a result of misappropriation of trade marks or breach of contract, even if the actual misappropriation or breach occurs elsewhere. *See S & D Trading Acad., LLC v. AAFIS, Inc.*, 494 F. Supp. 2d 558, 569 (S.D. Tex. 2007). This interest is diminished by the fact that the actual alleged misappropriation occurs in Costa Rica, and the probability that Costa Rica law will govern, or at least inform the dispute. This factor does not weigh in favor of either party.

The third factor requires the court to accord a degree of deference to the plaintiff's choice of forum. *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). It

Case 1:10-cv-00467-LG-RHW   Document 33   Filed 11/02/10   Page 16 of 21

is not clear that it is more convenient for Plaintiffs to litigate in Mississippi than other potential locations. Plaintiffs have no offices, personnel or operations in Mississippi. They appear to have chosen Mississippi because it is the state with which the Defendants have the greatest contacts. The Court therefore accords little weight to Plaintiffs' forum choice.

The fourth factor, evaluating the judicial system's interest in obtaining the most effective resolution of the case, requires the Court to consider the interests of the other potential jurisdictions. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987). The Court is to "look at the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *AST Sports Science, Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054 (10th Cir. 2008) (citations and quotation marks omitted).

Constenla argues that Costa Rica has an interest in hearing and resolving controversies involving its Law 6209, relating to distribution agreements. An interest of this nature may be "atypically strong." *Pritzker*, 42 F.3d at 64 n.9. Constenla submitted the declaration of Gino Cappella, an attorney in Costa Rica, to explain the relevant law. According to Mr. Cappella, Costa Rican courts have exclusive jurisdiction to determine the rights and duties of the parties when an agreement between a Costa Rican distributor and a foreign supplier is terminated. Mot. to Dism. Ex. B 2, ECF No. 12-6. Cappella states that were this Court to enter a judgment regarding the agreement between these Plaintiffs and Defendants, Costa Rican courts

would not enforce it.  "[T]he Costa Rican court will find that (a) any such US [sic] judgment pertains to a matter of exclusive jurisdiction of Costa Rica and (2) any such judgment contravenes the public policy of Costa Rica."  Def. Reply Ex. D 2, ECF No. 31-2.  This raises the possibility that this Court's orders would be for nothing, a result that "would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes."  *Pritzker*, 42 F.3d at 64.

Plaintiffs argue that they have no distribution agreement with Constenla, and a Costa Rican court would be acting improperly if it asserted exclusive jurisdiction on the basis of the Ciamesa agreement.  However, there clearly is some agreement underlying the parties' activities since 1996 that will have to be defined in order to resolve their rights and duties.  It is likely that a Costa Rican court will find this inquiry subject to its exclusive jurisdiction.  Other considerations impacting the effective resolution of the case are the location of the witnesses and evidence.  According to the declaration of Constenla's Samary Matamoros,

The parties executed the Distribution Agreement in Costa Rica.

. . .

Mars has a local manager with an office in Constenla's office building. Mars gives Constenla guidelines as to how its brands should be managed. Mars provides Constenla with new product launches and new ad campaigns for Costa Rica.  Mars plans activities for the Constenla sales force and has trained them in Costa Rica to ensure proper sales execution.

. . .

All of the meetings associated with the Distribution Agreement take place in Costa Rica.

. . .

-17-

> Constenla does not have any witnesses in Mississippi, and does not have any information in its possession, custody, or control relevant to Mars' claims in Mississippi. Most, if not all, of the documentary evidence relating to its alleged activities will be located in Costa Rica. Many, if not all, of potential witnesses relating to its alleged activities reside in Costa Rica. . . .
>
> Most, if not all, of the proof required to try this action (e.g., relating to Constenla's distribution and promotion activities) will be in the Spanish language and will need to be translated into English if this litigation is to proceed in Mississippi.

Mot. to Dism. Ex. A 5, ECF No. 12-1.

Thus, while most of the witnesses and evidence are in Costa Rica, and it is possible there are some in Virginia, there are none in Mississippi. Clearly, the greatest challenges related to the limits on a court's subpoena power and the availability of witnesses will arise in a Mississippi forum. Furthermore, because the parties' business relations have been centered in Costa Rica, the language translation problem will be greatest in a Mississippi forum.

In the declaration he provided on Constenla's behalf, Mr. Cappella states that intellectual property is protected in Costa Rica, and the Plaintiffs may bring an action there for any unauthorized use of the Mars trademarks. Def. Reply Ex. D 2, ECF No. 31-2. Plaintiffs may also bring a breach of contract action in Costa Rica under the Costa Rican Commerce Code. *Id.* Thus, jurisdiction in Mississippi is not necessary to avoid piecemeal litigation. All of this evidence together causes the fourth factor to weigh heavily in favor of the Defendants.

Finally, the fifth factor of the reasonableness inquiry focuses on whether the exercise of personal jurisdiction by the forum state affects the substantive social policy

interests of other states or foreign nations. *TH Agric. & Nutrition, LLC v. Ace European*, 488 F.3d 1282, 1297 (10th Cir. 2007). The Court should therefore look closely at the extent to which the exercise of personal jurisdiction interferes with Costa Rica's sovereignty. *Id*. Relevant considerations include "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident." *Id*.

It appears to the Court that exercising personal jurisdiction in Mississippi would affect the policy interests of Costa Rica. Plaintiffs entered into an importation and distribution agreement in Costa Rica with Constenla's former subsidiary company. There is no indication that anything other than Costa Rican law will govern the parties' agreement, whatever the terms of that agreement are determined to be. "[W]hen jurisdiction is exercised over a foreign citizen regarding a contract entered into in the foreign country, the country's sovereign interest in interpreting its laws and resolving disputes involving its citizens is implicated." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1098 (10th Cir. 1998) (citing *Paccar Int'l, Inc. v. Comm. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985)). Although this factor is not to be given controlling weight, *OMI Holdings*, 149 F.3d at 1097, it nevertheless weighs in favor of the Defendants.

After careful consideration of all of these factors, it appears to the Court that this case is one of the rare instances when exercising jurisdiction would be

unreasonable despite the presence of minimum contacts.  The interests the state of Mississippi are insubstantial compared to the strong interests of Costa Rica.  The declaratory judgment sought by Plaintiffs concerns activities of persons and organizations in Costa Rica and would require the cooperation of Costa Rican courts to enforce.  Cappella's uncontested declaration shows that the prospects of this Court's judgment surviving in Costa Rica would be slight.  Furthermore, except for the origin of the distribution chain, all aspects of the parties' relationship have taken place in Costa Rica.  The participants appear to be chiefly Costa Rican.  Plaintiffs do not point to any witnesses or evidence in Mississippi.  The merits of the case involve Costa Rican distributorship laws.  In all, these factors lead the Court to conclude that the exercise of personal jurisdiction over the Defendants would violate traditional notions of fair play and substantial justice.

Finally, Plaintiffs argue in the alternative that the Court has personal jurisdiction over Constenla pursuant to FED. R. CIV. P. 4(k)(2), which "authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim arising under federal law if that person is subject to personal jurisdiction in no state." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.23 (11th Cir. 2009).  The rule requires the Court to finds that "exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2)(B).  The Court has determined that exercising jurisdiction in this case would not comport with the due process clause of the Fourteenth Amendment.  Accordingly, this rule does not provide an alternative  basis for jurisdiction.

-20-

**IT IS THEREFORE ORDERED AND ADJUDGED** that the First Motion to Dismiss for Lack of Jurisdiction and Improper Venue and Forum Non Conveniens [11] filed by the Defendants is **GRANTED**.  The Plaintiffs' claims are dismissed with prejudice.

**SO ORDERED AND ADJUDGED** this the 2nd day of November, 2010.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE